J-S18026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CLARENCE R. HOBEREK | : | |
| | : | |
| Appellant | : | No. 1187 WDA 2023 |

Appeal from the Judgment of Sentence Entered January 30, 2023
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0000891-2022,
CP-63-CR-0002222-2021

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: September 3, 2024**

Clarence R. Hoberek appeals from the judgment of sentence entered following his convictions for theft by unlawful taking, receiving stolen property, unauthorized use of a motor vehicle, driving under the influence of alcohol or controlled substances ("DUI"), careless driving, and two counts of driving while operating privileges suspended or revoked.[1] We conclude Hoberek waived his claim and affirm the judgment of sentence.

The trial court set forth the following factual history:

> The following facts were adduced through the testimony at [Hoberek's] jury trial. Around March of 2021, Bill Verelst invited [Hoberek], who had recently fallen onto hard times, to stay with him and his mother at their residence . . . in Burgettstown. While [Hoberek] was staying at Bill Verelst's residence, he was not given consent, either by Bill Verelst

---

[1] 18 Pa.C.S.A. §§ 3921(a), 3925(a), 3928(a), and, 75 Pa.C.S.A. §§ 3802(a)(1), 3714, 1543(b)(1)(iii) respectively.

or his fiancé, Michele Fisher-Rice, to use any of the vehicles located at the residence, as Bill Verelst was aware that [Hoberek] did not possess a driver's license. In October of 2021, Bill Verelst and Michele Fisher-Rice traveled to Colorado, while Bill Verelst's mother, Patsy Verelst, was away in Virginia, leaving [Hoberek] alone at the residence. Prior to Bill Verelst leaving for Colorado, [Hoberek] asked him if he would be able to use the vehicle while he was gone, to which Bill Verelst again informed [Hoberek] that he was not able to drive the vehicle under any circumstances.

While in Colorado, Bill Verelst became sick and had to return home. After returning home, Bill Verelst and Michele Fisher-Rice encountered [Hoberek] asleep on the couch. Upon waking up, [Hoberek] stated "I didn't have anything to do with anything. I didn't do anything" and "I didn't do it. I wasn't here all week." Unaware of what [Hoberek] was talking about, Bill Verelst and Michele Fisher-Rice proceeded to scour the house, ultimately discovering that the downstairs of the residence was "completely destroyed" and "disheveled." After returning upstairs, Bill Verelst observed that [Hoberek] was no longer in the residence and began to search for him. Unable to find [Hoberek], Bill Verelst proceeded to call the police and indicated to them that someone had broken into his residence and rifled through his belongings. At this juncture, all the vehicles were still present at Bill Verelst's residence.

After contacting the police, Bill Verelst and Michele Fisher-Rice left to attempt to return the rental car. Bill Verelst drove the rental car, while Michele Fisher-Rice accompanied him in the Jeep Compass, leaving the Dodge Dart as the sole vehicle at the residence. Upon returning home from attempting to return the rental vehicle, Bill Verelst and Michele Fisher-Rice noticed that the Dodge Dart was missing and proceeded to call the police to report that the Dodge Dart had been stolen.

At this point, Michele Fisher-Rice left to go to work at the Dollar General store near the residence. While driving to the Dollar General, Michele Fisher-Rice encountered the missing Dodge Dart, which she observed was being driven by [Hoberek]. After seeing [Hoberek] driving the Dodge Dart, Michele Fisher-Rice called the police and informed them that she had just s[een] the missing vehicle. While Bill Verelst

was on the phone with the police, [Hoberek] returned to the residence, driving the Dodge Dart that had been missing. Upon seeing Bill Verelst exit the residence, [Hoberek] reentered the Dodge Dart and drove away. After [Hoberek] drove away in the Dodge Dart, that was the last time that Bill Verelst saw him that day.

Later that day, at 5:21 p.m., Trooper Fernando Abbondanza of the Pennsylvania State Police visited Bill Verelst at his residence after being dispatched in response to the phone calls that Bill Verelst had made to police earlier in the day. Upon arriving at Bill Verelst's residence, Trooper Abbondanza observed that the house was "in a bit of disarray." Trooper Abbondanza then interviewed Bill Verelst, through which Trooper Abbondanza learned that the Dodge Dart was missing from the residence. Trooper Abbondanza further learned, through his investigation, that [Hoberek] was observed driving the missing Dodge Dart on Paris Colliers Road.

Based upon his investigation, Trooper Abbondanza determined that [Hoberek] was a suspect as it pertained to the missing Dodge Dart. As part of his further investigation into the matter, Trooper Abbondanza queried the information for the Dodge Dart and learned that the vehicle was registered to Patsy Verelst. Trooper Abbondanza also obtained [Hoberek's] demographic information and queried [Hoberek's] driver's license, through which Trooper Abbondanza learned that [Hoberek] was DUI suspended. Further utilizing [Hoberek's] information, Trooper Abbondanza was able to provide a photograph of [Hoberek] to Bill Verelst, who identified [Hoberek] was the suspect. After concluding his investigation at the scene, Trooper Abbondanza entered the Dodge Dart as a stolen vehicle into the National Criminal Information Center.

Following his conversation with Trooper Abbondanza, Bill Verelst contacted his neighbor, Dylan Wolanski, to inform him that [Hoberek] had stolen the Dodge Dart. The next day, Dylan Wolanski learned that [Hoberek] was seen driving the Dodge Dart near the start of Paris Colliers Road, specifically, parked in a parking lot of a nearby store. Dylan Wolanski then proceeded to the location where [Hoberek] was parked and upon arriving at the location, observed [Hoberek] standing next to the Dodge Dart. Eventually,

[Hoberek] entered the Dodge Dart and drove down Paris Colliers Road. After [Hoberek] began driving the Dodge Dart, Dylan Wolanski called Bill Verelst to inform him of what was transpiring and proceeded to follow [Hoberek] down Paris Colliers Road. In addition to calling Bill Verelst, Dylan Wolanski also called the police and informed them that he was following [Hoberek].

After [Hoberek] passed the Verelst residence, he became aware that Dylan Wolanski was following him, at which point, [Hoberek] exited the Dodge Dart and yelled "I don't know who you are. What's your problem? Why are you following me?" After Dylan Wolanski yelled at [Hoberek] in response, [Hoberek] then proceeded to re-enter the Dodge Dart and turned left onto Bartleyville Road.

While on Bartleyville Road, [Hoberek] again stopped the Dodge Dart and exited the vehicle, at which point he approached Dylan Wolanski's vehicle and began banging on its windows, while also attempting to open the door to the vehicle. Following [Hoberek's] unfruitful attempt at opening the door to Dylan Wolanski's vehicle, [Hoberek] again re-entered the Dodge Dart and turned right onto Hanlon Station. At the end of Hanlon Station, [Hoberek] stopped the Dodge Dart for a third time, exited the vehicle equipped with a walking cane, walked towards Dylan Wolanski's vehicle, and pulled the cane into the air as if he were going to smash the windows of Dylan Wolanski's vehicle. At this point, Dylan Wolanski cracked his window and pulled out his firearm, resulting in [Hoberek] running back to the Dodge Dart.

After re-entering the Dodge Dart once again, [Hoberek] turned right onto Eldersville Road. Eventually, [Hoberek] turned onto a secondary road, stopped and exited the Dodge Dart, and stated "You can have the car. Keep the car. I'm done. I give up" before proceeding to walk down the road. Dylan Wolanski then proceeded to go over to the Dodge Dart to see if the keys were in the ignition. After failing to observe any keys, Dylan Wolanski yelled out to [Hoberek] to return the keys, at which point, [Hoberek] ran into the woods. Dylan Wolanski then re-entered his vehicle and began driving down the road, ultimately spotting [Hoberek] walking in the middle of the road.

As Dylan Wolanski followed, [Hoberek] walked up a nearby driveway. Spotting a lady standing on the front porch of the house, Dylan Wolanski shouted at her to call the police, as he did not have service at the time.

Throughout the incident, [Hoberek] was continuously speeding, reaching speeds of 65 miles per hour on a road with a speed limit of 25 miles per hour and drove erratically, including crossing the center line of the road and driving off of the road "20 or 25 times." In addition to [Hoberek's] dangerous driving, [Hoberek] also smelled of alcohol and had watery eyes during his interactions with Dylan Wolanski. Further, upon [Hoberek] abandoning the Dodge Dart, the interior of the vehicle was littered with cans of beer and smelled of alcohol.

Shortly after [Hoberek] abandoned the Dodge Dart, Trooper Jared King of the Pennsylvania State Police arrived on the scene, having been dispatched in response to the calls made by Bill Verelst and Dylan Wolanski regarding the stolen Dodge Dart. Upon arriving at the scene, Trooper King was able to observe the Dodge Dart, as well as meet with Dylan Wolanski. Through his discussion with Dylan Wolanski, Trooper King was informed that [Hoberek] was the driver of the Dodge Dart and was also provided with a physical description of [Hoberek]. Dylan Wolanski further informed Trooper King about [Hoberek's] whereabouts at the time, stating that [Hoberek] had fled into the woods.

Following his discussion with Dylan Wolanski, Trooper King overheard a dispatch from Washington County 911 regarding an individual matching [Hoberek's] description that was seen walking in a field near 460 Cedar Grove Road. Upon proceeding to the location, Trooper King observed an individual matching [Hoberek's] description walking in the field, at which point Trooper King confronted the individual and placed him into handcuffs. After placing the individual into handcuffs, Trooper King searched the individual and discovered an identification card that confirmed the identity of the individual as [Hoberek]. During the aforementioned interaction with [Hoberek], Trooper King smelled a strong odor of alcohol emanating from [Hoberek]. In addition to the odor of alcohol, Trooper King further observed that [Hoberek] appeared disheveled, had watery eyes, and was verbally combative. Based upon his observations of

[Hoberek], along with his training and experience, Trooper King believed that [Hoberek] may have been under the influence of alcohol and therefore, was incapable of safely operating a motor vehicle. Trooper King then proceeded to place [Hoberek] under arrest.

After [Hoberek] was placed under arrest, he was subsequently transported to the Pennsylvania State Police barracks located in Moon Township. Once at the barracks, Trooper King requested [Hoberek] to submit to chemical testing of his breath and twice read him Form DL-26. Following the first recitation of Form DL-26, [Hoberek] requested to speak with an attorney. Trooper King then read [Hoberek] Form DL-26 a second time, at which point [Hoberek] became belligerent to a point that Trooper King deemed his conduct to be a refusal to submit to the chemical testing. At no point did [Hoberek] sign Form DL-26.

As part of the investigation, Trooper Thomas Schuster of the Pennsylvania State Police conducted an interview of [Hoberek] that same day. Prior to conducting the interview, Trooper Schuster read [Hoberek] his Miranda warnings. Following the recitation of his rights under Miranda, [Hoberek] signed the Miranda Rights Warning and Waiver form, indicating that he was willing to waive his Miranda rights and proceed with the interview.

During the interview with Trooper Schuster, [Hoberek] admitted to driving the Dodge Dart and stated that he had been drinking alcohol during the incident. Throughout the interview with [Hoberek], Trooper Schuster smelled an odor of alcohol emanating from [Hoberek], which led Trooper Schuster to believe that Hoberek was under the influence of alcohol.

Trial Cout Opinion, filed Nov. 28, 2023, at 6-12 (citations and footnotes omitted).

Hoberek was found guilty of theft by unlawful taking, receiving stolen property, unauthorized use of a motor vehicle, and driving while operating privilege is suspended or revoked, DUI, and driving while operating privileges

are suspended or revoked and the court found him guilty of careless driving. The trial court sentenced Hoberek to an aggregate term of five to ten years' incarceration followed by 12 months reentry supervision. Hoberek filed a post-sentence motion, alleging "there was insufficient evidence, as a matter of law, to support the charges against [Hoberek]" and "[t]he prosecution's witness' testimony was inconsistent and incredible to the degree that the court's verdict was so contrary to the weight of the evidence so as to shock one's sense of justice." Post Sentence Motion, filed Feb. 8, 2023, at 2. The trial court denied the motion.

Hoberek timely appealed.[2] In his Rule 1925(b) statement, Hoberek stated the trial court had "committed an error of law and abuse of discretion

---

[2] Hoberek filed a timely post-sentence motion on February 8, 2023. The motion was denied by operation of law in June 2023, but the trial court did not enter an order deeming the motion denied. On September 12, 2023, the trial court denied the post-sentence motion. Hoberek filed a timely Notice of Appeal on October 2, 2023. *See Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa.Super. 2003), (finding a breakdown occurs when the clerk of courts fails to enter an order deeming a post-sentence motion denied by operation of law and notifying the defendant of same); *Commonwealth v. Braykovich*, 664 A.2d 133, 138 (Pa.Super. 1995) (holding that appellant's notice of appeal was timely, as it was filed within 30 days of an untimely order denying the appellant's post-sentence motion).

Further, Hoberek filed a single notice of appeal listing two docket numbers, rather than filing a notice of appeal at each docket as required by *Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018). However, we find quashal or remand not necessary, as a breakdown in the court occurred because the court entered an order requiring Hoberek to file "an appeal." *See Commonwealth v. Stansbury*, 219 A.3d 157, 160 (Pa.Super. 2019) (concluding breakdown in the court occurs when a court misadvises appellants of their appeal rights by advising them they can pursue appellate review by

*(Footnote Continued Next Page)*

in denying [Hoberek's] Motion for Judgment of Acquittal based upon the weight of the evidence at trial in that [Hoberek] should not have been found guilty based upon the standard of beyond of reasonable doubt" and "committed a clear error of law and abuse of discretion in denying [Hoberek's] Motion for New Trial based upon the weight of the testimony and evidence submitted at trial and that [Hoberek] could not have been found guilty under the reasonable doubt standard and therefore the remedy would be a new trial awarded." Rule 1925(b) Statement, filed Oct. 21, 2023.

Hoberek raises the following issue in his brief: "Whether the Court committed an error of law or abuse of discretion in denying [Hoberek's] Post-Trial Motion." Hoberek's Br. at 7.

Hoberek argues that the evidence showed areas where the trial court should have exercised discretion by using "reason, especially when applying the beyond reasonable doubt standard." *Id.* at 9. He points out that two hours after the alleged vehicle theft Trooper Abbondanza testified that he observed the house was "dissheveled" and that there was no video of the officer reading Hoberek the DL-26-A form, even though a video was required by department protocol. He further notes there was no blood draw, even though the police could have obtained a warrant for one. In addition, Hoberek states that a video depicted Hoberek telling Trooper Schuster that he had permission to use the vehicle and that he had been using the Dodge Dart, as well as Patsy and Bill

_____

filing a single notice of appeal, even though the court is addressing cases at multiple docket numbers).

Verelst's cars, for months. He further states that the Commonwealth presented no evidence he was behind the wheel of a vehicle while intoxicated.

Hoberek notes that Patsy Verelst testified she did not remember speaking with the troopers on the phone or her age and remembered going to Virginia only after being reminded in the courtroom hallway. He further notes that Patsy had left the vehicle keys on the kitchen table when Bill and Michelle were away, suggesting she left the keys because Hoberek had permission to use the vehicle.

Hoberek maintains the trial court "did not apply the proper weight regarding all of the above facts from trial, nor did the trial court apply any of the above facts to the law controlling this case." *Id.* at 11. He claims there were too many inconsistencies and mishandling of protocol for Hoberek to be found guilty beyond a reasonable doubt.

It is unclear whether on appeal Hoberek is challenging the sufficiency of the evidence, the weight of the evidence, or both. The trial court found he waived his sufficiency and weight claims because he failed to specify in his Rule 1925(b) statement which convictions lacked sufficient support or were contrary to the weight of the evidence. Tr.Ct.Op. at 15-16. For the sufficiency challenge, the court states that Hoberek failed to specify which "element or elements of the relevant verdicts, let alone which of the six verdicts, the evidence was allegedly insufficient at" and found the claim was "wholly undeveloped, vague, and lack[ed] the requisite sufficient specificity that would allow th[e c]ourt to prepare an adequate legal analysis." *Id.* at 15. For the

weight claim, the court similarly found Hoberek failed to specify which verdicts were against the weight of the evidence or provide reasons why the verdicts were against the weight of the evidence. It concluded that the weight claim "suffer[ed] the same fatal flaw as the sufficiency of the evidence claim," in that it was vague, undeveloped, and lacked the requisite specificity to allow the court to engage in legal analysis. *Id.* at 15-16.

We conclude Hoberek waived his sufficiency and weight challenges. "[T]o preserve a challenge to either the sufficiency or weight of the evidence on appeal, an appellant's Rule 1925(b) concise statement must state with specificity the elements or verdicts for which the appellant alleges that the evidence was insufficient or against the weight of the evidence." *Commonwealth v. Juray*, 275 A.3d 1037, 1048 (Pa.Super. 2022). "[S]pecificity is of particular importance in cases where . . . [an a]ppellant was convicted of multiple crimes, each of which contains elements that the Commonwealth must prove beyond a reasonable doubt." *Id.*

In his Rule 1925(b) statement, Hoberek stated the trial court "committed an error of law and abuse of discretion in denying [Hoberek's] Motion for Judgment of Acquittal based upon the weight of the evidence at trial in that [Hoberek] should not have been found guilty based upon the standard of beyond of reasonable doubt." He also alleged that it had "committed a clear error of law and abuse of discretion in denying [his] Motion for New Trial based upon the weight of the testimony and evidence submitted at trial and that [Hoberek] could not have been found guilty under the

- 10 -

reasonable doubt standard." Rule 1925(b) Statement. The Statement failed to specify the conviction or convictions, or the elements of them, that he was challenging. He therefore waived his claims.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/3/2024